FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.
MAY 14 2014
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3:14-00082 |
| v. | 18 U.S.C. § 1341 |
| R.C. PATEL | 18 U.S.C. § 1343 |
| | 18 U.S.C. § 1957 |
| a/k/a Rajesh C. Patel | 18 U.S.C. § 2 |
| a/k/a Rakesh C. Patel | |

# INDICTMENT

### COUNT ONE

THE GRAND JURY CHARGES:

At all times material to this Indictment:

1. Defendant **R.C. PATEL** was C.E.O. of the Diplomat Companies and was a hotel developer and owner.

2. An individual known to the Grand Jury and referred to herein as "M.P." was President of the Diplomat Companies and was a hotel developer and owner.

3. An individual known to the Grand Jury and referred to herein as "M.K." was a resident of Brentwood, Tennessee and a hotel owner.

<u>The Scheme to Defraud: The Best Western Deal</u>

4. Beginning in or around December 2008 and continuing until in or around February 2009, in the Middle District of Tennessee and elsewhere, defendant **R.C. PATEL** devised and intended to devise a scheme and artifice to defraud and to obtain money from M.K.

1

by means of materially false and fraudulent pretenses, representations, and promises, and by acts of concealment of the scheme, and in furtherance thereof used interstate wires, which scheme is further described in the following paragraphs.

5. It was part of the scheme that defendant **R.C. PATEL** solicited M.K. to contribute money for a proposed investment involving the mortgage on a property in Atlanta, Georgia that was or had previously been a Best Western hotel ("the Best Western property").

6. It was further part of the scheme that defendant **R.C. PATEL** represented to M.K. that if he contributed $500,000 cash he could buy a 14% share in the mortgage on the Best Western property.

7. It was further part of the scheme that defendant **R.C. PATEL** represented to M.K. that he planned to purchase the mortgage on the Best Western property and to offer to sell it for $5,000,000 within 120 days.

8. It was further part of the scheme that defendant **R.C. PATEL** misrepresented to M.K. that the price of the mortgage on the Best Western property was $3,750,000.

9. It was further part of the scheme that defendant **R.C. PATEL** induced M.K. to send a wire transfer of $500,000 to an account that was controlled by **R.C. PATEL** for the purpose of investing in the mortgage on the Best Western property.

10. It was further part of the scheme that defendant **R.C. PATEL** failed to use the funds provided by M.K. for any purposes related to the mortgage on the Best Western property, and instead converted these funds to his own personal use.

11. It was further part of the scheme that defendant **R.C. PATEL** caused a wire transfer of $775,000 to be sent from an account under his control to pay down a personal loan in his own name, a transaction that was unrelated to the mortgage on the Best Western property, on

the same day that M.K. had sent a wire transfer of $500,000 to this same account for the purpose of investing in the mortgage on the Best Western property.

12. It was further part of the scheme that defendant **R.C. PATEL** concealed the fact that he used the funds provided by M.K. for purposes unrelated to the mortgage on the Best Western property, and instead converted these funds to his own personal use, including for use in paying down an unrelated personal loan.

13. It was further part of the scheme that defendant **R.C. PATEL** misrepresented to M.K. that he had placed a bid on the mortgage on the Best Western property and that this bid had been accepted.

14. It was further part of the scheme that defendant **R.C. PATEL** provided a check in the amount of $500,000 to M.K. but failed to provide sufficient funds in the relevant checking account to satisfy this check.

## The Interstate Wire

15. On or about December 10, 2008, in the Middle District of Tennessee and elsewhere, defendant **R.C. PATEL**, for the purpose of executing the scheme, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, that is, the following: an email from RC@diplomatcompanies.com to M.K. in which defendant **R.C. PATEL** falsely represented that the price of the purchase of the mortgage on the Best Western property was $3,750,000 and fraudulently induced M.K. to pay $500,000 in return for a 14% interest in the mortgage on the Best Western property.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWO

THE GRAND JURY FURTHER CHARGES:

1. The preceding allegations of this Indictment are incorporated by reference as if fully set forth herein.

2. On or about December 10, 2008, in the Middle District of Tennessee and elsewhere, defendant **R.C. PATEL**, for the purpose of executing the scheme to defraud described in paragraphs 4 through 14 of Count One, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, that is, the following transfer of funds: a wire transfer of $500,000 sent interstate from First State Bank in Tennessee to Resurgens Bank in Georgia.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT THREE

THE GRAND JURY FURTHER CHARGES:

1. The preceding allegations of this Indictment are incorporated by reference as if fully set forth herein.

2. On or about February 25, 2009, in the Middle District of Tennessee and elsewhere, defendant **R.C. PATEL**, for the purpose of executing the scheme to defraud described in paragraphs 4 through 14 of Count One, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, that is, the following: an email from RC@diplomatcompanies.com to M.K. in which defendant **R.C. PATEL** informed M.K. that a check that had been provided to M.K. would come back if deposited.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FOUR

THE GRAND JURY FURTHER CHARGES:

1. The preceding allegations of this Indictment are incorporated by reference as if fully set forth herein.

### The Scheme to Defraud – The Atlantic Palms Deal

2. Beginning in or around November 2008 and continuing until in or around February 2009, in the Middle District of Tennessee and elsewhere, defendant **R.C. PATEL** devised and intended to devise a scheme and artifice to defraud and to obtain money from M.K. by means of materially false and fraudulent pretenses, representations, and promises, and by acts of concealment of the scheme, and in furtherance thereof, caused a package containing a signed operating agreement and a check for $750,000 to be deposited to be sent or delivered by a private and commercial interstate carrier and to be delivered by mail or by any private or commercial interstate carrier according to the direction thereon, which scheme is further described in the following paragraphs.

3. It was part of the scheme that defendant **R.C. PATEL** solicited M.K. to contribute money for a proposed investment involving a property in Myrtle Beach, South Carolina that was known as the Atlantic Palms hotel ("the proposed Atlantic Palms deal").

4. It was further part of the scheme that defendant **R.C. PATEL** represented to M.K. that he would form a partnership known as MB Atlantic Palms LLC for the purpose of investing in and managing the proposed Atlantic Palms deal.

5. It was further part of the scheme that defendant **R.C. PATEL** represented to M.K. that if he provided $750,000 cash he would own a 25% share in MB Atlantic Palms LLC and

5

that defendant **R.C. PATEL**, M.P., and one other investor would each contribute $750,000 cash and would each own a 25% share of MB Atlantic Palms LLC.

6. It was further part of the scheme that defendant **R.C. PATEL** misrepresented to M.K. that Birmingham Asset Management had acquired the mortgage on the Atlantic Palms property.

7. It was further part of the scheme that defendant **R.C. PATEL** misrepresented that Birmingham Asset Management was a large brokerage asset management firm, and concealed the fact that Birmingham Asset Management was owned by defendant **R.C. PATEL** and M.P.

8. It was further part of the scheme that defendant **R.C. PATEL** sent M.K. a "final operating agreement" for MB Atlantic Palms LLC that listed four members, or partners, of MB Atlantic Palms LLC: defendant **R.C. PATEL**, M.K., M.P., and a fourth individual. Pursuant to the terms of this agreement, each member would contribute $750,000 capital and each would have a 25% ownership share in MB Atlantic Palms LLC.

9. It was further part of the scheme that defendant **R.C. PATEL** instructed M.K. to sign the "final operating agreement" and to send it and a check made payable to MB Atlantic Palms LLC to defendant **R.C. PATEL**.

10. It was further part of the scheme that defendant **R.C. PATEL** induced M.K. to send a check for $750,000, made out to MB Atlantic Palms LLC, for the purposes of becoming a member of MB Atlantic Palms LLC with a 25% ownership share in MB Atlantic Palms LLC.

11. It was further part of the scheme that defendant **R.C. PATEL** used only a portion of the funds provided by M.K. for purposes related to the proposed Atlantic Palms deal, and converted the remainder of these funds to his own use.

12. It was further part of the scheme that, within approximately ten days of depositing M.K.'s check for $750,000 into the MB Atlantic Palms LLC account, defendant **R.C. PATEL** caused a wire transfer of $775,000 to be sent from this account to pay down a personal loan in his own name, a transaction that was unrelated to the proposed Atlantic Palms deal.

13. It was further part of the scheme that defendant **R.C. PATEL** concealed the fact that he used a portion of the funds provided by M.K. for purposes unrelated to the proposed Atlantic Palms deal, and instead converted these funds to his own use, including for use in paying down an unrelated personal loan.

14. It was further part of the scheme that defendant **R.C. PATEL** caused the operating agreement for MB Atlantic Palms LLC to be revised such that the only members of MB Atlantic Palms LLC were defendant **R.C. PATEL** and M.P., and such that M.K. was not a member of and owned no share of MB Atlantic Palms LLC.

15. It was further part of the scheme that defendant **R.C. PATEL** executed an operating agreement for MB Atlantic Palms LLC that omitted M.K.'s membership and ownership interest in MB Atlantic Palms LLC.

16. It was further part of the scheme that defendant **R.C. PATEL** misrepresented and concealed the actual membership and ownership structure of MB Atlantic Palms LLC from M.K.

17. It was further part of the scheme that defendant **R.C. PATEL** executed an operating agreement for MB Atlantic Palms LLC that misrepresented the capital contributions to MB Atlantic Palms LLC and that omitted reference to M.K.'s $750,000 contribution.

18. It was further part of the scheme that defendant **R.C. PATEL** concealed the fact that he had deprived M.K. of his membership and ownership interest in MB Atlantic Palms LLC.

7

19. It was further part of the scheme that, after M.K. learned that defendant **R.C. PATEL** had deprived him of his membership and ownership interest in MB Atlantic Palms LLC, defendant **R.C. PATEL** sought to obtain an additional $378,955.25 from M.K.

20. It was further part of the scheme that defendant **R.C. PATEL** and M.P., as the members of MB Atlantic Palms LLC, transferred ownership and control of MB Atlantic Palms LLC to their spouses, and deprived M.K. of any ownership or control over MB Atlantic Palms LLC.

The Mailing

21. On or about December 1, 2008, in the Middle District of Tennessee and elsewhere, defendant **R.C. PATEL**, for the purpose of executing the scheme to defraud, and attempting to do so, knowingly caused a package containing a signed operating agreement and a check for $750,000 to MB Atlantic Palms LLC to be sent and delivered by a private and commercial interstate carrier according to the direction thereon.

All in violation of Title 18, United States Code, Sections 1341 and 2.

COUNT FIVE

THE GRAND JURY FURTHER CHARGES:

1. The preceding allegations of this Indictment are incorporated by reference as if fully set forth herein.

2. On or about November 30, 2008, in the Middle District of Tennessee and elsewhere, defendant **R.C. PATEL**, for the purpose of executing the scheme described in paragraphs 2 through 20 of Count Four, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, that is, the following: an email from RC@diplomatcompanies.com to M.K. in which

8

defendant **R.C. PATEL** falsely represented that an attached document was the final operating agreement for MB Atlantic Palms LLC, falsely represented that M.K. would have a 25% ownership share in MB Atlantic Palms LLC, and fraudulently induced M.K. to provide $750,000 in exchange for a 25% ownership share in MB Atlantic Palms LLC.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SIX

THE GRAND JURY FURTHER CHARGES:

1. The preceding allegations of this Indictment are incorporated by reference as if fully set forth herein.

2. On or about February 20, 2009, in the Middle District of Tennessee and elsewhere, defendant **R.C. PATEL**, for the purpose of executing the scheme described in paragraphs 2 through 20 of Count Four, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, that is, the following: an email from RC@diplomatcompanies.com to M.K. in which defendant **R.C. PATEL** sought to induce M.K. to pay additional funds to M.B. Atlantic Palms LLC.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SEVEN

THE GRAND JURY FURTHER CHARGES:

1. The preceding allegations of this Indictment are incorporated by reference as if fully set forth herein.

2. On or about December 10, 2008, in the Middle District of Tennessee and elsewhere, defendant **R.C. PATEL** did knowingly engage and attempt to engage in the following monetary transactions in criminally derived property of a value greater than $10,000, affecting interstate commerce and by, through, and to a financial institution, namely, the transfer of $775,000 that had been provided by M.K. from Resurgens Bank account #3000619 to Security Bank of Bibb County for credit to loan # 6060172, such property having been derived from specified unlawful activities, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, and mail fraud, in violation of Title 18, United States Code, Section 1341.

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT EIGHT

THE GRAND JURY FURTHER CHARGES:

1. The preceding allegations of this Indictment are incorporated by reference as if fully set forth herein.

2. On or about December 12, 2008, in the Middle District of Tennessee and elsewhere, defendant **R.C. PATEL** did knowingly engage and attempt to engage in the following monetary transactions in criminally derived property of a value greater than $10,000, affecting interstate commerce and by, through, and to a financial institution, namely, the transfer of $100,000 that had been provided by M.K. from Resurgens Bank account #3000619 to Resurgens Bank account # 3000910, such property having been derived from specified unlawful

activities, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, and mail fraud, in violation of Title 18, United States Code, Section 1341.

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT NINE

THE GRAND JURY FURTHER CHARGES:

1. The preceding allegations of this Indictment are incorporated by reference as if fully set forth herein.

2. On or about December 12, 2008, in the Middle District of Tennessee and elsewhere, defendant **R.C. PATEL** did knowingly engage and attempt to engage in the following monetary transactions in criminally derived property of a value greater than $10,000, affecting interstate commerce and by, through, and to a financial institution, namely, the use of funds in Resurgens Bank account # 3000910 to purchase a Resurgens Bank cashiers check in the amount of $130,201.08, such property having been derived from specified unlawful activities, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, and mail fraud, in violation of Title 18, United States Code, Section 1341.

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT TEN

THE GRAND JURY FURTHER CHARGES:

1. The preceding allegations of this Indictment are incorporated by reference as if fully set forth herein.

2. On or about December 12, 2008, in the Middle District of Tennessee and elsewhere, defendant **R.C. PATEL** did knowingly engage and attempt to engage in the following monetary transactions in criminally derived property of a value greater than $10,000,

11

affecting interstate commerce and by, through, and to a financial institution, namely, the deposit of a Resurgens Bank cashiers check in the amount of $130,201.08 into Haven Trust Bank account # 150001915, such property having been derived from specified unlawful activities, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, and mail fraud, in violation of Title 18, United States Code, Section 1341.

All in violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS

1. The preceding allegations of this Indictment are incorporated by reference as if fully set forth herein.

2. Upon conviction of an offense alleged in Counts One through Six, defendant **R.C. PATEL** shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(c) and 28 United States Code, Section 2461, any property which constitutes or is derived from proceeds traceable to the scheme and artifice to defraud in each offense, including but not limited to a money judgment in an amount to be determined, said amount representing the amount of proceeds obtained as a result of such offense.

3. Upon conviction of the offense alleged in Count Seven through Ten, defendant **R.C. PATEL** shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property including but not limited to a money judgment in an amount to be determined, said amount representing the amount of proceeds obtained as a result of the offense.

4. If any of the property described above, as a result of any act or omission of defendant **R.C. PATEL**:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property, and it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of defendant **R.C. PATEL** up to the value of said property listed above as subject to forfeiture.

A TRUE BILL

_____
FOREPERSON

_____
DAVID RIVERA
UNITED STATES ATTORNEY

_____
WILLIAM F. ABELY
ASSISTANT UNITED STATES ATTORNEY